**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

THOSE CERTAIN UNDERWRITERS AT
LLOYD'S LONDON SUBSCRIBING
POLICY NO. C111271/054,

          Plaintiff/Counter-Defendant,

    v.                                   No. CV 14-00178 WJ/CG

NEW MEXICO PSYCHIATRIC SERVICES
CORPORATION, BABAK B. MIRIN, M.D.
AND SUSAN SHAW, INDIVIDUALLY AND
AS PERSONAL REPRESENTATIVE OF
JACK MARK SHAW, DECEASED,

          Defendants/Counter-Plaintiffs.[1]

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

      THIS MATTER comes before the Court upon Plaintiff's Motion for Summary Judgment

Against Defendants New Mexico Psychiatric Services Corporation, Babak B. Mirin, M.D., and

Susan Shaw, filed June 10, 2015 **(Doc. 47)**.  Having reviewed the parties' briefs and applicable

law, the Court finds that Plaintiff's motion is well-taken and, accordingly, it is GRANTED.

Defendants New Mexico Psychiatric Services Corporation ("NMPSC") and Babak Mirin ("Dr.

Mirin") take no position on the motion (Doc. 52).  Defendant Susan Shaw has filed a response

opposing the motion (Doc. 53).

**BACKGROUND**

      In March 2013, Susan Shaw filed a complaint in state court against NMPSC; the Board of

Commissioners of Chaves County, New Mexico; and several individual defendants.  Susan

---

[1]   Ms. Shaw has asserted cross-claims against New Mexico Psychiatric Services ("NMPS"), Babak Mirin and
Parker Harvey , CPCU.  Doc. 42.  Also, NMPS has asserted a counterclaim for breach of contract and bad faith
against Plaintiff.  Doc. 7.

Shaw's state court complaint alleges counts of negligence and loss of consortium relating to the death of her husband, Jack Shaw, while he was incarcerated at the Chaves County Detention Center.   NMPSC was under contract to provide medical care at that facility at all relevant times. Dr. Mirin, the president and owner of NMPSC, is the named insured on an insurance Policy ("Policy" or "Lloyd's Policy") issued by Plaintiff .  NMPSC is listed as an additional named insured on the Lloyd's Policy with respect to claims and claim expenses arising directly from professional services rendered by Dr. Mirin. Plaintiff instituted the instant action against NMPSC and Dr. Mirin in February 2014, seeking a declaration of the rights and obligations of the parties under the Lloyd's Policy with respect to the state-court lawsuit instituted by Susan Shaw. Plaintiff later filed the First Amended Complaint, which added Susan Shaw as a defendant and interested party in this action. See (Doc. 24).

The instant lawsuit is the coverage dispute that arose as a result of the state court wrongful death lawsuit.  According to the complaint in that lawsuit, Jack Shaw was arrested by a Chaves County Sheriff's deputy for driving under the influence of intoxicants, possessing an open container of alcohol, and driving on a suspended license.  Mr. Shaw was transported to the Eastern New Mexico Medical Center for a blood draw in order to determine his blood alcohol concentration.  When he refused to consent to the blood draw he was transported to Chaves County Detention Center for booking. While Mr. Shaw was unattended, he fell and struck his head.  At that time, a female–believed to be a medical staffer employed by NMPSC–briefly examined Mr. Shaw.  He may have subsequently fallen again. Mr. Shaw was taken into the booking area for photographs to be taken of his head wounds and was escorted by the detention officers into the shower. He remained in the booking cell for about ninety minutes. Approximately two and a half hours after Mr. Shaw fell, the Chaves County Detention Center

and NMPSC personnel called 911 for emergency help for Mr. Shaw, who was then taken by

ambulance to the hospital.  On April 2, 2011, Mr. Shaw died as a result of his injuries.  See Ex.

A to Complaint [Doc. 24-1], ¶¶ 13-27.

## DISCUSSION

In the state court lawsuit, NMPSC seeks indemnification from Plaintiff, including a legal

defense to the claims brought against it in the state court action.   In this federal action, Plaintiff

seeks summary judgment on its claim for declaratory judgment as well as on Defendants'

counterclaims for breach of contract and bad faith, contending that it has no obligation to provide

a defense to NMPSC or to provide coverage for or indemnify NMPSC for claims made by Susan

Shaw against NMPSC in the underlying state court lawsuit.

## I.      Undisputed Facts

In April 2012, Plaintiff issued the Lloyd's Policy, Psychiatrists and Psychologists

Professional Liability Insurance Policy No. C11127/054 with a policy period of March 21, 2012

to March 21, 2013 to Babak B. Mirin, M.D. as the named insured.  Doc. 24-2, Ex. B to Compl.

The Lloyd's Policy, in pertinent part, provides the following:

> The Company agrees to pay on behalf of the insured those sums the insured
> becomes legally obligated to pay as damages because of claims made against the
> insured during **the policy period**, or any applicable Extended Reporting Period,
> arising out of the rendering of (including the failure to render) **professional
> services**, as described in ARTICLE II-CLAIMS TO WHICH THIS POLICY
> APPLIES; . . . We have no duty to pay **claim expenses** or defend **insured** against
> any **claim** seeking **damages** covered by the policy.

Doc. 24-2 at 16, Ex. B to Compl. at 16.[2]  The Lloyd's Policy defines professional

services as:

> [T]he rendering of health care, treatment or services within a doctor-patient
> relationship,  or in the performance of services by any **named insured** as a

---

[2]   The bold language appears to be supplied in the original policy.

member of a formal accreditation or similar professional board or committee of a
hospital at which he/she is a staff member.

Doc. 24-2, Ex. B to Compl., at 35.

The Lloyd's Policy states that the insurance applies to a **claim** only if:

1. The **professional services** giving rise to such claim are rendered: . . .

      b. To a patient of the **named insured**;
      c. Within the **insured's profession**  . . .

2. On the effective date of the **policy period** of the first professional liability policy
that we issue to the named insured, the named insured did not have knowledge of
any act, omission, or  circumstance that may reasonably be anticipated to give rise
to such claim for professional services; and

3. Such **claim** is reported to us within thirty (30) days of receipt by the **named
insured** of a written notice of a **claim**.

Doc. 24-2, Ex. B to Compl., at 17.

Article III of the Lloyd's Policy provides that each of the following is an insured:

1.    The person(s) or entity(ies) identified as the **named insureds**(s) on
the Declarations Page or in an Endorsement or Schedule attached to this
policy:

2.    The **named insured's** employees and/or authorized volunteer workers
while working within the course and scope of their duties on behalf of the
**named insured**. However, we have no duty or obligation to defend, pay
damages on behalf of or indemnify any **insured** in any claim for **damages**
arising out of the acts or omissions of or by any physician or surgeon
under contract with, employed by or volunteering for the named insured
unless such a person is specifically named as named insured on the
Declarations Page or in an Endorsement of Schedule attached to this
policy.

Doc. 24-2, Ex. B to Compl. at 18.

The "Named Insured" listed on the Declarations page of the Lloyd's Policy is "Babak B.

Mirin, M.D." and the "Professional Specialty of the Insured" is "Psychiatry."  Doc. 24-2, Ex. B

to Compl., at 1.  Endorsement No. 6 to the Lloyd's Policy states that "New Mexico Psychiatric

Services Corporation is added as an additional named insured hereunder but only in respect to claims and claim expenses arising directly from professional services rendered by Babak B. Mirin, M.D."  Doc. 24-2, Ex. B to Compl. at 10.

Plaintiff's investigation confirmed that Shaw was not a patient of Dr. Mirin's and that Dr. Mirin did not render any professional services to Mr. Shaw.  Doc. 24-3, Ex. C to Compl.; emails dated May 23, 2013-May 29, 2013 between Jacqueline Olexy and Sandy Dimian; Doc. 47-1, Pltff's Ex. A (Mirin Dep.) at 52:18-53:7  ("Mr. Shaw was not my patient . . . he did not become my patient personally as I did not provide any services for him, I did not recommend anything that would have influenced his course of treatment.").

On January 16, 2014, Plaintiff agreed to provide and pay for a defense to NMPSC in the state court litigation, subject to a complete reservation of rights.  Doc. 47-2, Pltff's Ex. B (letter from Sandy Dimian to Cord Borner, dated January 16, 2014).

Defendant Susan Shaw disputes only Fact No. 8, which states that Mr. Shaw was not Dr. Mirin's patient and claims that there are "multiple facts" which show that Mr. Shaw was a patient of Dr. Mirin, but presents absolutely no fact or evidence to support that dispute.   Having presented no responsive evidence under a Rule 56 standard, Defendant Susan Shaw tries to use that fact in an unsuccessful syllogistic attempt to salvage a denial of medical care claim against Chaves County.  *See* Doc. 53 at 2 ("If Dr. Mirin was not responsible for Mr. Shaw, then Chaves County was operating a jail with no medical care by any medical doctor").  It does not necessarily follow that if Dr. Mirin was not "responsible" for Mr. Shaw, then Defendant Susan Shaw prevails against Chaves County on the denial of care claims.  Further, the denial of medical care issues have nothing to do with the matter presently before the Court, which concerns

5

whether Plaintiff is obligated to defend and indemnify.  Therefore, the Court finds that all of Plaintiff's statements of fact are undisputed.

## II.  Legal Standard

Pursuant to Rule 56, a party is entitled to summary judgment if it can establish "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P.56(a).  The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007).  Only disputes of material fact "preclude the entry of summary judgment." *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co*., 407 F.3d 1091, 1111 (10th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  If the moving party meets its burden, "the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Herrera*, 506 F.3d at 1309 (citation and internal quotation marks omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and thus, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The Court "examine[s] the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co*., 636 F.3d 1300, 1302 (10th Cir. 2011).

The construction of an insurance policy is a matter of law. *Grimes v. Swaim*, 971 F.2d 622, 624 (10th Cir.1992) (citation and internal quotation marks omitted).  Having found that Defendant Susan Shaw has not presented any disputes of fact to Plaintiff's statements of facts, the Court addresses Plaintiff's arguments in order to determine whether those facts and the

applicable law entitles Plaintiff to summary judgment.  Merely establishing absence of genuinely

disputed facts will not "carry the day for the summary judgment movant."  Rather, the movant

must also demonstrate that the applicable controlling law requires a decision in the movant's

favor.  *See Swanson v. Fields*, 814 F.Supp. 1007, 1010 (D.Kan).

**III.    Analysis**

        Plaintiff contends that a declaratory judgment should be entered because it had no duty to

provide a defense, coverage, or indemnification in the underlying litigation for two reasons:  (1)

the Lloyd's Policy covers NMPSC only to the extent that the professional services were rendered

*by Dr. Mirin*—and the undisputed facts show that Dr. Mirin did not render any such services—

and (2) the Policy covers only Dr. Mirin's provision of *psychiatric* services and there is no

allegation, claim or facts suggesting that psychiatric services were rendered to Jack Shaw by

*anyone* at NMPSC, much less Dr. Mirin.

A.    Relevant Law

        An insurer has no duty to defend or indemnify if the allegations clearly fall outside the

policy's provisions.  *Guaranty Nat'l Ins. Co. v. Baca*, 120 N.M. 806 (Ct.App. 1995); *Bernalillo

County Deputy Sheriffs Ass'n v. County of Bernalillo*, 114 N.M.  695, 697 (1992) ("If the

allegations of the complaint clearly fall outside the provisions of the policy, neither defense nor

indemnity is required.").

        An insurer's duty to defend is broader than its duty to indemnify.  *Hartford v. Gandy

Dancer*, 864 F.Supp.2d 1157, 1193 (D.N.M. 2012); *Servants of the Paraclete, Inc. v. Great Am.

Ins. Co.*, 857 F.Supp. 822, 832 (D.N.M. 1994).  If the allegations on the face of the complaint are

potentially or arguably within the scope of coverage, the insurer is obligated to defend.

*American Gen. Fire & Cas. Co. v. Progressive Cas. Co*., 110 N.M. 741, 744 (1990).  Known but

unpleaded facts can also bring a claim within the scope of coverage. *Id.* ("The duty of an insurer to defend arises from the allegations on the face of the complaint or from the known but unpleaded factual basis of the claim that brings it arguably within the scope of coverage."). Because the duty to defend is broader than the duty to indemnify, "a finding of no duty to defend necessarily precludes a finding of a duty to indemnify." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 961 (10th Cir. 2011) (where there is no duty to defend, it follows that there can be no duty to indemnify).

B.    No Care Rendered by Dr. Mirin to Mr. Shaw

Plaintiff argues that in order for NMPS to be covered under the Lloyd's Policy, Dr. Mirin would have had to render care to Mr. Shaw. Because the undisputed facts show that Dr. Mirin did not render any care to Mr. Shaw, Plaintiff was not obligated to defend or indemnify. Under the Lloyd's Policy, named insureds include employees and/or authorized volunteer workers while working within the course and scope of their duties on behalf of the named insured. *See* Pltff's Undisp. Fact ("SOF") No. 5. The only named insured on the Declaration Page of the Lloyd's Policy is Dr. Mirin. The state court complaint alleges that a female medical staffer at NMPSC briefly examined Mr. Shaw after he fell. However, while NMPSC employees appear to be covered under the Lloyd's Policy, that coverage is explicitly limited to "claims and claim expenses arising **directly** from professional services rendered by Babak B. Mirin, M.D." SOF No. 7 (emphasis added). The only facts alleged in the state court complaint that implicate NMPS make it clear that Dr. Mirin was not the individual who rendered professional services to Mr. Shaw, but rather a female medical staffer employed by NMPSC. Doc. 24-1, Ex. A to Compl., ¶ 21. There are no facts (and Defendant Susan Shaw has presented no evidence) that

Dr. Mirin, a male, was even present at the detention center when Mr. Shaw was examined and given any kind of health care treatment.

Even the known but unpleaded facts do not implicate Dr. Mirin providing any medical care to Mr. Shaw.   Plaintiff's investigation confirmed that Mr. Shaw was not Dr. Mirin's patient and that Dr. Mirin did not render professional services to Mr. Shaw.  SOF No. 8.  Dr. Mirin's own sworn deposition testimony confirms that fact as well.  Doc. 47-1, Pltff's Ex. A (Mirin Dep.) at 52:18-53:7 ("Mr. Shaw was not my patient . . . .").

As the Court has already observed, Defendant Susan Shaw puts forward no facts or evidence to rebut those presented by Plaintiff to infer that Dr. Mirin rendered any professional services to Mr. Shaw.  This undisputed fact is sufficient for the Court to find that there is no duty to defend or cover the claims alleged in the underlying lawsuit under the Lloyd's Policy.

C.    No Rendering of Psychiatric Services

In addition to successfully presenting undisputed facts that Dr. Mirin did not provide any medical care for Mr. Shaw's injury, Plaintiff also argues that there is another basis to deny coverage.  The Lloyd's Policy covers only those professional services rendered within Dr. Mirin's professional specialty, which is identified in the Lloyd's Policy as psychiatry.  SOF Nos. 4, 6.  It is undisputed that Mr. Shaw's injury was physical, and that any care rendered addressed that physical injury.  The state court complaint indicates that while at the Chaves County Detention Center, Mr. Shaw fell forward, hitting his head on a metal door, a cinderblock wall, or the concrete floor.  Doc. 24-1, Ex. A to Compl., ¶ 20.  The complaint further alleges that after Mr. Shaw's fall, "a female, believed to be a medical staffer employed by Defendant NMPSC, briefly examined Shaw."  *Id*., ¶ 21.  The state court complaint ultimately alleges that Mr. Shaw died as a result of the physical injuries he sustained at the Chaves County Detention Center. Id., ¶

9

27.  Thus, there has been no allegation and no known facts which suggest that Mr. Shaw's injury was anything other than physical or that any care rendered was psychiatric or psychological in nature.

The Lloyd's Policy is "Psychiatric and Psychologists Professional Liability Insurance." SOF No. 1.  Under its express language, it applies only if the professional services giving rise to such claims are rendered to a patient of the named insured, and within the insured's profession, which in the Lloyd's Policy is identified as "Psychiatry."  *See* SOF Nos. 4, 6.  There is nothing convoluted or unclear about the meaning of these provisions:  the Lloyd's Policy does not provide coverage unless Mr. Shaw was a patient of Dr. Mirin *and* if Mr. Shaw was provided psychiatric care by Dr. Mirin.   It is undisputed that Mr. Shaw was not a patient of Dr. Mirin, and it is equally obvious that psychiatric services would be rendered in order to diagnose and treat mental illnesses, not physical injury.  *See Gamboa v. Allstate Ins. Co.*, 1986-NMSC-078, ¶ 9, 104 N.M. 756, 758, 726 P.2d 1386, 1388 (the language of the policy must be given its natural and ordinary meaning unless the language is ambiguous).

Plaintiff's expert witness, Robert Kellog, confirmed that coverage of the type provided by the Lloyd's Policy here reflects coverage for a psychiatrist or psychologist who engages in the typical psychiatric or psychological practice, which includes diagnoses and treatment for mental impairment or mental illness.   Pltff's Ex. C (Kellogg Aff.).   Mr. Kellogg's opinion is not disputed by Defendant Susan Shaw, nor does she challenge either his qualifications or the reliability of his opinions.  Mr. Kellogg opined that, based on his experience and expertise in the Medical Professional Liability ("MPL") insurance industry, "diagnosis and treatment for an immediate and serious physical head injury, such as that alleged to have been sustained by Mr.

Shaw, would not fall under the specialty area of expertise as identified and underwritten [by the Lloyd's Policy]."  Doc. 47-3, Pltff's Ex. C at 3.

The Court finds that Plaintiff was not obligated to defend or indemnify on this basis as well.  Thus, Plaintiff is entitled to a declaration that it was not obligated to defend or cover NMPSC because (1) the undisputed facts show that Dr. Mirin did not render any professional services to Mr. Shaw, nor is it alleged in the state court action; and (2) there is no claim that psychiatric services were rendered to Mr. Shaw by anyone at NMPSC, much less Dr. Mirin. Having found that the allegations on the face of the underlying state court complaint do not bring the claims within the scope of a defense owed by Plaintiff, the Court may also find that Plaintiff was not obligated to indemnify, either.  *See United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 961 (10th Cir.  2011) (where there is no duty to defend, it follows that there can be no duty to indemnify).

C.     Summary Judgment Appropriate on Counterclaims

Plaintiff contends that it is entitled to summary judgment on counterclaims for bad faith and breach of contract asserted by counter-claimants NMPSC and Dr. Mirin, because there can be no breach of an obligation which does not exist.  *See, e.g., Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 753 F.2d 824, 826 (10th Cir. 1985) (it is axiomatic that if there is no duty to settle a claim, there can be no negligent or bad faith refusal to settle).  Because there is no coverage for the underlying claims in the state court lawsuit, there can be no contractual duty to defend or indemnify.  Under New Mexico law, "an insurer has a right to refuse a claim without exposure to a bad faith claim if it has reasonable grounds to deny coverage." *American Nat. Property and Cas. Co. v. Cleveland*, 293 P.3d 954, 958 (N.M.Ct.App. 2012) ("To be liable for bad faith, the insurer must lack a founded belief, and the founded belief is absent when the

insurer fails to undertake an investigation adequate to determine whether its position is tenable.").

Before delving into the merits of this issue, the Court observes, as does Plaintiff, that NMPSC and Dr. Mirin have taken "no position" on any of the issues raised by Plaintiff and thus offer nothing to support their counter-claims.  *See* Doc. 42.  Ironically, it is Defendant Susan Shaw who has responded to Plaintiff's arguments against the counterclaims even though she has not asserted any counterclaims against Plaintiff.  The counterclaims do not involve her and do not impact the dispute between her and Plaintiff and therefore she has no standing to take a position on this issue.

Even so, Defendant Susan Shaw's arguments are useless to preclude summary judgment. Defendant Susan Shaw asserts that she can still go forward with a bad faith claim even in the absence of underlying coverage.  However, she offers little support for this statement, citing to cases that have no applicability here either because (1) coverage between the insurer and insured was not an issue, *see Dellaira v. Farmers Ins. Exchange,* 136 N.M. 552, 556 (Ct.App. 2004) (reversing dismissal of extra-contractual claims against entity that handled claims for insurer and was not in privity with insured); or because (2) the insurer was found to have a duty to indemnify *and* the facts supported a finding of bad faith in the handling of the claims, *see O'Neel v. USAA Ins. Co.,* 131 N.M. 630 (Ct.App. 2002)  (prior to denying claim, insurer accused insured of breach the insurance contract by misrepresenting and concealing material facts and failing to cooperate with the investigation, which jury found to constitute bad faith).   Neither situation is analogous here.

In New Mexico, an insurer acts in bad faith when it denies a first party claim for reasons that are frivolous or unfounded.  *See Sloan v. State Farm Mut. Auto. Ins. Co.,* 2004–NMSC–004,

¶¶ 3, 18, 135 N.M. 106, 85 P.3d 230. "Unfounded" is defined not as "erroneous" or "incorrect," but rather the failure to exercise care for the interests of the insured, an arbitrary or baseless refusal to pay, lacking support in the language of the policy or the circumstances of the claim. *American Nat. Property and Cas. Co. v. Cleveland*, 293 P.3d 954, 958 (N.M.App.,2012).  Even if Plaintiff's conclusion that there was no coverage is wrong (which the Court has determined it is not), an insurer's incorrect decision to refuse benefits and bring suit for declaratory relief, without more, is not enough to establish  bad faith under New Mexico law.  *United Nuclear Corp. v. Allendale Mut.Ins. Co.*, 103 N.M. 480, 485 (1985) (when there are legitimate questions regarding the payment of benefits, it cannot be said that the insurer acted in bad faith).   In a bad faith claim, the question is not whether the claim was denied or even wrongfully denied, but whether the claim was handled reasonably . *See Yumukoglu v. Provident Life & Acc. Ins. Co*., 131 F.Supp.2d 1215, 1226 (D.N.M., 2001) (To show bad faith on the part of an insurer, "there must be no reasonable basis for denying the claim.")  None of the Defendants – those who take "no position" and Susan Shaw—has presented any evidence demonstrating frivolous, unfounded, arbitrary, baseless, and/or reckless conduct by Plaintiff in connection with its handling of the claim. See Doc. 47. Accordingly, Plaintiff is entitled to summary judgment on the claim by Dr. Mirin and NMPSC for bad faith and breach of contract.

D.       Remaining Claims

With summary judgment granted in favor of Plaintiff with respect to the declaratory judgment on duty to defend and indemnify, as well as Defendants' counter-claims, the Court notes that the only claims remaining in this case appear to be the cross-claims asserted by Susan Shaw against NMPSC, Dr. Mirin and Parker Harvey, CPCU (the insurance agent through whom the policy was purchased), in which she alleges that NMPSC and Dr. Mirin negligently failed to

obtain insurance that satisfied the requirements of the contract between Chaves County and NMPSC and/or Dr. Mirin.

According to the Court's docket, there is a telephonic scheduling conference set in this case for August 24, 2015 at 1:30 p.m. before the Magistrate Judge assigned to this case.  Doc. 50. The Court suggests that at that conference, there should be some discussion concerning how the parties ought to proceed on that claim.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment Against Defendants New Mexico Psychiatric Services Corporation, Babak B. Mirin, M.D., and Susan Shaw, filed June 10, 2015 **(Doc. 47)** is hereby GRANTED in that the Court hereby DECLARES, for reasons stated above, that Plaintiff  has no duty  to defend or indemnify under the Lloyd's Policy for the claims made in the underlying state court litigation, such that Plaintiff is not obligated to reimburse or indemnify costs, legal or defense fees, and/or expenses related to that litigation;

**IT IS FURTHER ORDERED** that Plaintiff is entitled to summary judgment as to the Counterclaims asserted by Dr. Mirin and NMPSC, for reasons described in the above Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

14